UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------X
EMMA J. TYSON, ET AL.,
       Plaintiffs,      :

       - against -      :

MATTHEW WILLAUER, ET AL.,   : No. 3:01CV01917(GLG)
                                 **OPINION**
       Defendants.      :
------------------------------------X

FILED
Oct 24  2 04 PM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

      Defendants Jeffrey W. Rasey, Special Agent of the Federal Bureau of Investigation ("FBI"), and Sergeant Matthew Willauer of the Bloomfield Police Department[1] have moved for summary judgment on the ground of qualified immunity **[Doc. # 74]**.[2] The only remaining count against these Defendants is brought pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971),[3] for their alleged violation of

---

[1] At all relevant times to Plaintiff's Complaint, Defendant Willauer was a formally deputized member of the Federal Task Force, and was acting in that capacity during the incident that is the basis of Plaintiffs' Complaint. Officers so designated are treated as federal employees and may exercise federal law enforcement powers, including the execution of warrants. 21 U.S.C. § 878(a), 5 U.S.C. § 3374(c). Defendant Willauer is represented by the United States Department of Justice in this matter. See 28 C.F.R. § 50.15.

[2] On May 29, 2002, the Court granted Defendant Rasey's Motion to Dismiss Count One, and granted the United States' Motion to Dismiss Counts Two through Nine. Accordingly, the only count remaining as to Defendant Rasey is Count Ten.

[3] Defendant Willauer is named in Count One, which is brought under 42 U.S.C. § 1983. Since Defendant Willhauer is being treated as a federal employee for purposes of this case, the § 1983 claim against him should have been asserted as a

1

Plaintiffs' federal constitutional rights in connection with their execution of an arrest warrant for one Dennis Rowe at Plaintiffs' home on October 20, 1999. Plaintiffs claim that Rowe no longer lived there and that Defendants' unreasonable and mistaken execution of the arrest warrant resulted in the unlawful search and seizure of the Plaintiffs' persons and home, in violation of their clearly established rights under the Fourth Amendment to the United States Constitution (Compl. ¶ 92). Defendants assert that, in executing the arrest warrant, they relied on a properly issued, valid arrest warrant, and, in so doing, they are protected from suit by the doctrine of qualified immunity

### Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Additionally, Rule 56(e), Fed. R. Civ. P., provides:

> When a motion for summary judgment is made and supported as provided in this rule, an

---

Bivens claims. Therefore, although he is not named in Count Ten, both sides have treated this Count as having been asserted against him in his capacity as a member of the Federal Task Force.

2

objecting to ten of Defendants' numbered facts but without any citation to an affidavit of a witness competent to testify as to the facts at trial or to any admissible evidence as required by the Local Rules. See D. Conn. L. Civ. R. 56(a)3. Additionally, Plaintiffs failed to address the other 70 statements of fact. Presumably, this was because they were admitted. After Defendants pointed out these deficiencies in their reply brief, Plaintiffs, without leave of court, filed an untimely Amended Local Rule 56(a)2 Statement, addressing the remaining numbered paragraphs of Defendants' Local Rule 56(a)1 Statement, providing citations to affidavits or other evidence in support of their denials and objections, and attaching the affidavit of Plaintiff Emma J. Tyson. Defendants argue that this Court should deem admitted Defendants' statement of facts based on Plaintiffs' failure to comply with the Federal Rules and the Local Rules.

Local Rule 56(a)1 states in unequivocal terms that "[a]ll material facts set forth in [the Local Rule 56(a)1] statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2." In accordance with this Rule, this Court has repeatedly held that the opposing party's failure to submit a

---

tried.

These requirements are in addition to the material required by the Federal Rules of Civil Procedure. D. Conn. L. Civ. R. 56(a)4.

4

timely Local Rule 56(a)2 Statement will result in the Court's deeming admitted all facts set forth in the moving party's Local Rule 56(a)1 Statement. See, e.g., Booze v. Shawmut Bank, 62 F. Supp. 2d 593, 595 (D. Conn. 1999); Trzaskos v. St. Jacques, 39 F. Supp. 2d 177, 178 (D. Conn. 1999). Likewise, we will deem admitted for purposes of this motion all facts set forth in Defendants' Local Rule 56(a)1 Statement. Nevertheless, because we are considering these facts in ruling on a motion for summary judgment, they will be viewed in the light most favorable to Plaintiffs with all reasonable inferences drawn in favor of Plaintiffs, as the non-moving parties. Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001).

## Discussion

Government officials are subject to suit in their individual capacities for alleged violations of constitutional rights in the course of their federal employment. However, qualified immunity shields them from liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, a government actor performing discretionary tasks is entitled to qualified immunity from suit if either (1) his actions did not violate clearly established law; or (2) it was objectively reasonable for him to believe that his actions did not violate

5

such law. <u>Salim v. Proulx</u>, 93 F.3d 86, 89 (2d Cir. 1996). A claim of qualified immunity in a <u>Bivens</u> action is considered under the same standards as a qualified immunity defense in a § 1983 case. <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); <u>Jones v. New York State Div. of Military & Naval Affairs</u>, 166 F.3d 45, 51 (2d Cir. 1999).

The protection afforded by qualified immunity provides "an immunity from suit rather than a mere defense to liability." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). Accordingly, the Supreme Court and Second Circuit have encouraged the use of summary judgment when qualified immunity is raised as a defense. <u>See</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 227-28 (1991); <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993).

Here, in support of their qualified immunity defense, Defendants assert that no clearly established right was violated and that Defendants' entry into Plaintiffs' residence to execute a valid arrest warrant was lawful and reasonable. They state that their only involvement in this matter was the execution of the arrest warrant and that they were entitled to rely upon a valid, properly issued arrest warrant as they did in this case.

A brief examination of the facts is necessary.

<u>Defendant Rasey</u>

As part of a federal task force investigation of a Jamaican drug trafficking organization in the Hartford area, Defendant

6

Special Agent Rasey had been designated as the leader of Team 10, one of 28 teams comprising the Task Force. On October 20, 1999, at 5:00 a.m., the task force teams, including Team 10, which consisted of Defendants Rasey and Willauer, two other FBI Special Agents, three agents of the United States Customs Service, and a member of the Connecticut State Police, assembled in Hartford to review their assignments for the day. (Id. at ¶¶ 6 & 7.) Team 10 was assigned to execute a federal arrest warrant upon Dennis Rowe, a/k/a "Dickey," a suspected participant in the drug-trafficking ring, at 9 Craigs Road, Windsor, Connecticut. (Rasey Aff. ¶¶ 4 & 5.) FBI Special Agent Mark Gentil briefed Team 10 on his investigation of suspect Rowe, and indicated that this ring was prone to violence. (Rasey Supp. Aff. ¶ 6.) Special Agent Gentil also provided them with the background information and documentation[6] concerning the basis for his determination that 9 Craigs Road was suspect Rowe's residence. (Id. at ¶ 8.)

This was Defendant Rasey's first involvement of any kind with this matter. (Rasey Aff. at ¶ 10.) In particular, he had no part in the investigation to determine the proper address for Rowe nor in the application for the arrest warrant. (Id. at ¶

---

[6] It is unclear from Rasey's Affidavit exactly what information Special Agent Gentil provided to Rasey and Team 10. Gentil's Affidavit indicates that his determination that Rowe resided at 9 Craigs Road was based on Connecticut Department of Motor Vehicle records, Bell Atlantic Mobile telephone records, and an NCIC check of Rowe's criminal record, all of which indicated that his residence address was 9 Craigs Road.

7

9.)

Team 10 then traveled to 9 Craigs Road in Windsor, where they arrived at approximately 6:25 a.m. Defendant Rasey knocked on the front door, rang the door bell, and announced "police with a warrant." (Id. at ¶ 12.) Approximately one minute later, he opened the unlocked door so that he and the other members of Team 10 could enter, conduct a security sweep of the house, and apprehend Dennis Rowe. At that time, he saw a lady, later identified as Plaintiff Emma Tyson, approaching the front door. (Id. at ¶ 13.) Members of Team 10 conducted a sweep of the house, and located Plaintiff Kim Tyson, Emma Tyson's daughter-in-law, in the basement and her grandson, Plaintiff Reggie Tyson, in a main-floor bedroom. (Id. at ¶ 14.) Plaintiff Emma Tyson advised them that Dennis Rowe had moved out four months earlier, when she purchased the house, and showed them her warranty deed. She gave the task force Rowe's new address, 190 Ethan Drive.[7] (Id. at ¶ 16.) Rasey's testified that he had no physical contact with any of the Plaintiffs. (Id. at ¶ 19.) Defendant Rasey and the Task Force then went to 190 Ethan Drive, where they arrested

---

[7] Although the complaint alleges that Defendants forcefully entered Plaintiffs' home, with weapons drawn, carrying battering rams, and yelling at the Plaintiffs to get down (Compl. at ¶ 16), Plaintiffs have not provided any affidavits or other admissible evidence in opposition to the motion for summary judgment to support these allegations, or to establish that either Defendant Rasey or Defendant Willauer engaged in any of these alleged activities.

8

Rowe. (Id. at ¶ 20.) This was Rasey's only involvement with this matter or with the Plaintiffs.

Defendant Willauer

Sergeant Willauer was likewise assigned to Team 10. (Willauer ¶¶ 3 & 5.) Like Defendant Rasey, Willauer took no part in the investigation to determine Rowe's address or in the application for the arrest warrant. (Id. ¶¶ 5 & 8.) After Team 10 received its briefing in Hartford, Willauer called the Windsor Police Department to advise them that they would be executing an arrest warrant at 9 Craigs Road that morning. (Id. at ¶ 6.) He then met with the Windsor police officers, who accompanied him to the 9 Craigs Road residence. (Id.) They arrived at approximately 6:25 a.m. and took their positions around the residence. (Id. at ¶ 10.) Shortly thereafter, he observed members of Team 10 approach the front door, knock, and announce that "it was the police." (Id. at ¶ 11.) Members of Team 10 then entered through the unlocked front door. (Id. at ¶ 12.) He remained at the threshold to the front door and had no contact whatsoever with any of the Plaintiffs during this incident. (Id. at ¶ 14.) After a few minutes, he left with members of Team 10 and went to 190 Ethan Drive where they located and arrested Dennis Rowe. (Id. at ¶¶ 14 & 21.)

The issue presented is whether Defendants' involvement in the attempted execution of a valid arrest warrant at the wrong

9

address gives rise to a violation of Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures. It is undisputed that neither Defendant had any involvement in the application for the arrest warrant or in ascertaining the address of suspect Rowe. The arrest warrant was a valid warrant issued the previous day, on October 19, 1999, by the Honorable Thomas P. Smith, U.S. Magistrate Judge. (Defs.' Ex. E.) The FBI Agent who obtained the warrant had explained to Defendant Rasey and Team 10 the basis for his conclusion that suspect Rowe resided at 9 Craigs Road. There were no facts known to either Defendant Rasey or Defendant Willauer that would have alerted them to the fact that Rowe no longer lived at the Craigs Road address.

Plaintiffs argue that Defendants failed to conduct a proper investigation prior to the execution of the warrant. But, armed with a facially valid arrest warrant, issued by a judicial officer, and absent knowledge of any facts or circumstances that should have reasonably alerted Defendants to the fact that the suspect's address had changed, Defendants had no duty to initiate their own investigation prior to executing the warrant. See Baker v. Mc Collan, 443 U.S. 137, 143 (1979); Mann v. Township of Hamilton, No. 90-3377, 1991 WL 87586, at *2 (D.N.J. May 20, 1991).

Plaintiffs also challenge the manner in which the warrant was executed. With respect to Defendant Willauer, the undisputed

10

facts show that he never entered the Plaintiffs' house and never had any contact with any of the Plaintiffs. There was no violation of any of the Plaintiff's Fourth Amendment rights with respect to any actions taken by him. There being no violation of a constitutional right, Defendant Willauer is entitled to qualified immunity from suit.

As to Defendant Rasey, his involvement was somewhat greater. He states under oath that he knocked on the door, rang the doorbell, announced the presence of the police with a warrant several times. When no one answered, he opened an unlocked door to allow the arrest team to enter to conduct a security sweep. When Rowe was not located, Plaintiffs were asked if they knew of his whereabouts. Defendant Rasey had no physical contact with any of the Plaintiffs. It is not even clear that he participated in the sweep of the premises. There is no evidence of record that would establish that the manner of his attempted execution of the arrest warrant was unreasonable or that any other actions taken by him were unreasonable.

An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives, or in which the officer reasonably believes him to live, when there is reason to believe that the suspect is present within the residence. Payton v. New York, 445 U.S. 573, 603 (1980); United States v. Terry, 702 F.2d 299, 319

11

(2d Cir.), cert. denied, 461 U.S. 931 (1983); United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir.), cert. denied, 516 U.S. 869 (1995); United States v. Stinson, 857 F. Supp. 1026, 1028 (D. Conn. 1994).

Plaintiffs maintain that there are genuine issues of material fact as to whether the Defendants had a reasonable belief that this was Rowe's residence and whether he was present. The proper inquiry is whether there is a reasonable belief that the suspect resides at the place to be entered to execute the arrest warrant, and whether the officers have reason to believe that the suspect is present. United States v. Lauter, 57 F.3d 212, 215 (2d Cir. 1995). The officer's belief need not be correct, only reasonable. United States v. Lovelock, 170 F.3d 339, 343 (2d Cir.), cert. denied, 528 U.S. 853 (1999). Here, Defendant Rasey's belief that suspect Rowe resided at 9 Craigs Road was reasonably based on a facially valid arrest warrant. He arrived at 9 Craigs Road at 6:35 a.m.,[8] which was early enough for him to reasonably infer that Rowe would be present. The courts have recognized that once agents have a reason to believe that a suspect lives in a particular dwelling, they may reasonably infer that he will be home early in the morning. Terry, 702 F.2d at 319.

---

[8] Plaintiffs' complaint alleges that the time was even earlier, 5:57 a.m.

"What a citizen is assured by the Fourth Amendment is not that no government search of his house will occur in the absence of a warrant . . . but that no such search will occur that is unreasonable." Lovelock, 170 F.3d at 343 (internal citations and quotations omitted). The constitutional requirement is that the officers have a basis for a reasonable belief as to the operative facts, not that they acquire all available information or that those facts exist. Id. at 344.

Plaintiffs rely on the case of Steagald v. United States, 451 U.S. 204 (1981), for the proposition that Defendants were required to obtain a search warrant, in addition to an arrest warrant, in order to enter the Plaintiffs' residence. Steagald, however, did not prohibit entry into a residence reasonably believed to belong to the suspect. See Lovelock, 170 F.3d at 344. Indeed, the Court in Steagald noted that the situations in which a search warrant would be required are few. Steagald, 451 U.S. at 213. In Steagald, the officers attempted to rely on an arrest warrant to enter the home known to belong to a third person, based on their belief that the suspect named in the arrest warrant might be a guest there. Here, however, Defendants believed, based on the information in the arrest warrant, which they had no reasonable basis to question, that suspect Rowe resided at 9 Craigs Road, and they entered Plaintiffs' home on the mistaken assumption that he still lived there. Under the

13

circumstances, Defendant Rasey was not required to obtain a search warrant.

There was no violation of Plaintiffs' constitutional rights by Defendant Rasey. We therefore find that Defendant Rasey is entitled to qualified immunity.

### Conclusion

Finding that both Defendant Rasey and Defendant Willauer are entitled to qualified immunity, their motion for summary judgment is GRANTED **[Doc. # 74]** as to all claims asserted against them.

SO ORDERED.

Date: October 23, 2003.
      Waterbury, Connecticut.

_____
GERARD L. GOETTEL,
United States District Judge