UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------X
EMMA J. TYSON, ET AL.,
                                    :
        Plaintiffs,
                                    :
        - against -
                                    : No.  3:01CV01917(GLG)
MATTHEW WILLAUER, ET AL.,             **OPINION**
                                    :
        Defendants.
------------------------------------X

FILED

Nov  6  2 ∞ PM '03

U.S DISTRICT COURT
NEW HAVEN, CONN.

    Plaintiffs have brought this civil rights action against

various federal, state, and local law enforcement officers,

alleging that their constitutional rights were violated when the

defendants forcefully entered their residence with an arrest

warrant for a suspect who had lived there four months earlier.

Defendant Thomas Bennett is a State Police Detective, who

was assigned to assist the Federal Bureau of Investigation

("FBI") in the execution of the arrest warrant at issue.  We

previously granted his Motion to Dismiss all of plaintiffs' state

constitutional and common-law claims (Counts Two through Nine)

asserted against him.  The only remaining claim is brought under

42 U.S.C. § 1983 for his alleged violation of plaintiffs' Fourth

and Fourteenth Amendment rights (Count One).  Pursuant to Rule

56(c), Fed. R. Civ. P., Defendant Bennett now moves for summary

judgment as to this count on the ground of qualified immunity.

Finding no genuine issues of material fact, his motion will be

granted.

1

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.; see generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  In ruling on a Rule 56 motion for summary judgment, the Court cannot resolve issues of fact. Rather, it is empowered to determine only whether there are material issues in dispute to be decided by the trier of fact. The substantive law governing the case identifies those facts that are material.  Anderson, 477 U.S. at 248.  In assessing the record to determine whether a genuine dispute as a material fact exists, the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  Id. at 255;  Matsushita Electric Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Facts

The following facts are taken from the defendant's Local Rule 56(a)1 Statement and have been admitted by plaintiffs.

Defendant Bennett has been employed by the State of Connecticut, Department of Public Safety, Division of State Police for the past 15 years.  At all relevant times, he was

serving as a State Police Detective to the Statewide Narcotics Task Force.  On October 20, 1999, he was ordered to assist the FBI with a serving a number of arrest warrants in connection with a large-scale federal drug investigation.  That morning, he went to a briefing in Hartford and was assigned to a team of federal, state, and local officers who were responsible for arresting a suspect by the name of Dennis Rowe.  Defendant Bennett took no part in the underlying investigation or in the procurement of the arrest warrant.  In fact, he testified under oath that he never saw the arrest warrant.  He was not familiar with suspect Rowe and had no independent knowledge of his address or his whereabouts.  In all respects, he relied on the information provided by the FBI and had no reason to suspect that the information provided to him was anything but reliable.

At approximately 6:00 a.m., the task force arrived at what was believed to be Rowe's residence, 9 Craigs Road in Windsor, Connecticut.  This was the address on the arrest warrant. Defendant Bennett was assigned to cover the side of the residence in case Rowe attempted to escape.  From this location, he saw several police officers enter the residence through the front door but he could not see whether they knocked before entering. All lights were off in the house and he assumed the occupants were asleep.  After he saw the lights in the house come on and after waiting at his post for a period of time, he walked to

3

the front door and observed several of the officers engaged in a conversation with the occupants of the house.  He walked into the living room and learned that there may have been a mistake concerning the address of Rowe's current residence.  Upon learning this, he exited the residence and waited outside.  This was his only involvement.

Plaintiff Emma Tyson, the record owner of the house at 9 Craigs Road, states in her sworn affidavit that she had purchased the house in June, 1999.  She states that on October 20, 1999, when the officers arrived, her front door was locked and she never heard any of them knock or announce their presence.  The only cars parked in the driveway that morning were two vehicles registered in her name and plaintiff Kim Tyson.

## Discussion

Defendant Bennett asserts that he is entitled to qualified immunity for his actions in assisting the FBI in serving a facially valid arrest warrant at plaintiffs' address.  Plaintiffs respond that there are genuine issues of material fact as to whether he had a reasonable belief that suspect Rowe resided at 9 Craigs Road, whether Rowe was present at the time the officers attempted to execute the arrest warrant, and, in general, whether defendant's actions were plainly incompetent.

Government officials are subject to suit in their individual capacities for alleged violations of constitutional rights in the

4

course of their employment.  However, qualified immunity shields them from liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Thus, a government actor performing discretionary tasks is entitled to qualified immunity from suit if either (1) his actions did not violate clearly established law; or (2) it was objectively reasonable for him to believe that his actions did not violate such law.  Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996).  The protection afforded by qualified immunity provides "an immunity from suit rather than a mere defense to liability."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Accordingly, the Supreme Court and Second Circuit have encouraged the use of summary judgment when qualified immunity is raised as a defense.  See Hunter v. Bryant, 502 U.S. 224, 227-28 (1991); Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

Defendant Bennett asserts that there is no genuine issue of material fact that his conduct did not violate plaintiffs' constitutional rights and, therefore, he is entitled to qualified immunity from suit.  See Saucier v. Katz, 533 U.S. 194 (2001).  He does not question plaintiffs' right under the Fourth Amendment to be free from unreasonable searches and seizures, but he maintains that his actions in no way violated that fundamental right.

5

It is undisputed that Defendant Bennett was not involved in the underlying investigation of suspect Rowe, or in applying for the arrest warrant, or in ascertaining the correct address for Rowe.  The arrest warrant was a valid warrant issued the previous day, on October 19, 1999, by the Honorable Thomas P. Smith, U.S. Magistrate Judge.  It is also undisputed that there were no facts known to Defendant Bennett that would have alerted him to the fact that Rowe no longer lived at the Craigs Road address.

Plaintiffs do not disagree as to any of these facts, but argue that Bennett's lack of knowledge – indeed, his failure to even read the arrest warrant – preclude him from now asserting that he had a reasonable belief that this was Rowe's residence and that Rowe would be present when they attempted to execute the arrest warrant.  In essence, plaintiffs seem to be arguing that, even though the officers had a facially valid arrest warrant, and even though officer Bennett has no reason to believe that any information contained therein was inaccurate, he had an independent duty to investigate.  We disagree.

Defendant Bennett's sole involvement with this incident was to assist in the arrest, his specific assignment being to cover the side of the house in case the suspect escaped.  The FBI officer in charge had obtained an arrest warrant, and whether or not Defendant Bennett actually reviewed the warrant, he had been briefed by the FBI agent in charge (Pls.' Ex. 2, Answer No. 6).

6

Absent knowledge of any facts or circumstances that would or
should have reasonably alerted him to the fact that the suspect's
address had changed, Defendant Bennett had no duty to initiate
his own investigation.  See Baker v. McCollan, 443 U.S. 137, 143
(1979); Mann v. Township of Hamilton, No. 90-3377, 1991 WL 87586,
at *2 (D.N.J. May 20, 1991).

In Hartsfield v. Lemacks, 50 F.3d 950, 956 (11th Cir. 1995),
the Court held that, although a deputy sheriff who failed to make
a reasonable effort to identify the proper residence to be
searched was not entitled to qualified immunity on a civil rights
claim, the officers who accompanied the deputy on the search were
protected by qualified immunity because "nothing in the record
indicate[d] that these officers acted unreasonably in following
[the deputy's] lead, or that they knew or should have known that
their conduct might result in a violation of the [plaintiff's]
rights."  Id.  Here, the record is devoid of any evidence that
would support the conclusion that Defendant Bennett acted
unreasonably.  He could reasonably rely on the warrant issued by
Magistrate Judge Smith and was entitled to follow the lead of the
federal agents in charge.

Additionally, the courts have recognized that once officers
have a reason to believe that a suspect lives in a particular
dwelling, they may reasonably infer that he will be home early in
the morning.  United States v. Terry, 702 F.2d 299, 319 (2d

7

Cir.), cert. denied, 461 U.S. 931 (1983). In this case, the officers attempted to execute the arrest warrant around 6:00 a.m. The house was dark, and it appeared to Defendant Bennett that the occupants were asleep. Assuming this was the correct address for suspect Rowe, Defendant Bennett could reasonably infer that he was home at this hour.

Although Defendant Bennett did enter plaintiffs' home, this was only after the other officers had already done so, and he left as soon as he ascertained that this might be the incorrect address for suspect Rowe. An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives, or in which the officer reasonably believes him to live, when there is reason to believe that the suspect is present within the residence. Payton v. New York, 445 U.S. 573, 603 (1980); Terry, 702 F.2d at 319; United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir.), cert. denied, 516 U.S. 869 (1995); United States v. Stinson, 857 F. Supp. 1026, 1028 (D. Conn. 1994). Defendant Bennett was not involved with a search or sweep of the residence and had no physical contact or even verbal communications with any of the plaintiffs.

"What a citizen is assured by the Fourth Amendment is not that no government search of his house will occur in the absence of a warrant . . . but that no such search will occur that is unreasonable." United States v. Lovelock, 170 F.3d 339, 343 (2d

8

Cir.), <u>cert. denied</u>, 528 U.S. 853 (1999)(internal citations and quotations omitted). The constitutional requirement is that an officer have a basis for a reasonable belief as to the operative facts, not that he is required to acquire all available information or that those facts exist. <u>Id.</u> at 344.

We find that there was no violation of any of the Plaintiffs' Fourth Amendment rights with respect to any actions taken by Defendant Bennett. There being no violation of plaintiffs' constitutional rights, Defendant Bennett is entitled to qualified immunity from suit.

<u>**Conclusion**</u>

Accordingly, his motion for summary judgment is GRANTED [Doc. # 82].

SO ORDERED.

Date: October  November 1   , 2003.
      Waterbury, Connecticut.


                                        _____
                                        GERARD L. GOETTEL,
                                        United States District Judge

9