/CV1917 ORD

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------X
EMMA J. TYSON, ET AL.,            :
     Plaintiffs,                  :
     - against -                  :   No. 3:01CV01917(GLG)
MATTHEW WILLAUER, ET AL.,         :   **OPINION**
     Defendants.                  :
----------------------------------X

FILED

Nov 10  1 44 PM '03

U.S DISTRICT COURT
NEW HAVEN, CONN.

Defendants Dwayne Taylor, Shannon B. Pollick-Haynes,[1] Kevin Searles, and the Town of Windsor, have moved for summary judgment on all counts of plaintiffs' complaint against them [Doc. # 79]. The background of this case has been discussed at length in earlier opinions of this Court. Familiarity with those background facts is presumed, and they will not be repeated here, except to the extent that specific facts are necessary to this decision.

### Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule

---

[1] As of October 20, 1999, the date relevant to this action, Shannon Pollick-Haynes was known as Shannon Pollick. Therefore, she is referred to as Officer Pollick throughout this opinion.

1

56(c), Fed. R. Civ. P.; see generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In ruling on a Rule 56 motion for summary judgment, the Court cannot resolve issues of fact. Rather, it is empowered to determine only whether there are material issues in dispute to be decided by the trier of fact. The substantive law governing the case identifies those facts that are material. Anderson, 477 U.S. at 248. In assessing the record to determine whether a genuine dispute as a material fact exists, the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Id. at 255; Matsushita Electric Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### Factual Background

Plaintiffs have brought this civil rights action against various federal, state, and local law enforcement officers, claiming that these defendants violated their constitutional rights when they mistakenly entered plaintiffs' residence seeking to arrest a suspect, Dennis Rowe a/k/a "Dicky," who had lived there four months earlier. As discussed in several earlier opinions of this Court, a Federal Bureau of Investigation ("FBI") Task Force had been investigating a Jamaican drug-trafficking ring in the Hartford, Connecticut area. FBI Special Agent Mark Gentil had applied for an arrest warrant for Rowe, who was wanted on drug charges. On October 19, 1999, United States Magistrate

Judge Thomas P. Smith signed and issued the arrest warrant for Dennis Rowe at 9 Craigs Road, Windsor, Connecticut. The following morning, a group of federal, state, and local agents, designated as Team 10 of the Task Force, went to 9 Craigs Road to execute the warrant.

The first involvement of the Windsor Police Department with the arrest warrant for Dennis Rowe was upon receiving a call that morning, shortly before 6:00 a.m., from Sergeant Willauer, who telephoned the Windsor Police Department to advise them that the Task Force would be executing an arrest warrant in Windsor and requesting the uniformed presence of the Windsor Police Department. None of the Windsor police officers had any prior involvement in this investigation, in obtaining the warrant, or in ascertaining Dennis Rowe's address. After receiving the call from Sergeant Willauer, Police Chief Searles dispatched Officers Taylor and Pollick to meet with Sergeant Willauer and Team 10. Taylor and Pollick met with Willauer at approximately 6:00 a.m., at which time they saw the arrest warrant issued by the Magistrate for Rowe. They then departed for 9 Craigs Road. Neither Pollick or Taylor were aware of any facts that caused them to suspect that the address on the warrant was incorrect.

After arriving at the residence at 6:25 a.m., Officer Pollick was positioned at the rear entrance to the house with two other members of Team 10, and Officer Taylor was stationed at the front door, right behind FBI Special Agent Rasey. Rasey knocked

3

on the front door, rang the door bell and announced "police with a warrant" several times.[2] Approximately one minute later, Rasey opened the door so that he and members of Team 10 could conduct a security sweep inside the house and apprehend Rowe. At that point, plaintiff Emma Tyson approached the front door.

After Agent Rasey gained entrance, Officer Pollick entered the residence. She did not draw her weapon. She did not open any doors or sealed containers or remove any property from the premises. Likewise, Officer Taylor entered the premises. He never drew his weapon and did not open any doors or sealed containers or remove any property. Neither Officer Taylor nor Officer Pollick ever touched or physically contacted the plaintiffs in any way. Officers Taylor and Pollick and the

---

[2] Rule 56(e) of the Federal Rules of Civil Procedure provides that once a motion for summary judgment is made and supported by affidavits and other admissible evidence, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In this case, defendants have provided the Court with a number of sworn affidavits. The only affidavit provided by the plaintiffs is that of Emma Tyson, in which she states that the front door was locked and she did not hear the officers knock or announce their presence before entering her house. On the other hand, FBI Agent Rasey states under oath that he did knock. His testimony is supported by the sworn affidavits of Sergeant Willauer and Officer Taylor.

There is nothing in Emma Tyson's affidavit or anywhere else in the record that would support the plaintiffs' claims in their complaint that the officers forced the door open or that they were carrying battering rams or had their weapons drawn or yelled at the plaintiffs to get down.

4

members of Team 10 then learned that Rowe no longer resided at 9 Craigs Road and that Emma Tyson had purchased the house some four months earlier. Plaintiff Emma Tyson then appeared to have an asthma attack, and Officer Pollick summoned emergency medical help. At approximately 6:50 a.m., Team 10, accompanied by Officers Pollick and Taylor, departed and proceeded to 190 Ethan Drive in Windsor, where Rowe was apprehended and arrested.

Officers Pollick and Taylor testified that, at the time that they assisted the FBI Task Force, they relied on the information supplied to them by fellow law enforcement officers as to where the warrant would be executed.

No disciplinary action was ever taken against Officer Pollick or Officer Taylor by the Windsor Police Department for his or her involvement in this incident.

### Discussion

Plaintiffs have asserted the following claims against defendants Pollick and Taylor: Count One, Violation of 42 U.S.C. § 1983; Count Two, Violation of the Connecticut Constitution; Count Three, Willful or Wanton Assault; Count Four, Negligent Assault; Count Five, Negligent Infliction of Emotional Distress; Count Six, Intentional Infliction of Emotional Distress; Count Seven, Negligence; Count Eight, Invasion of Privacy; and Count Nine, Trespass. As to defendant Searles, plaintiffs have asserted claims for violation of 42 U.S.C. § 1983 (Count Eleven),

negligence and carelessness (Count Twelve), and negligent infliction of emotional distress (Count Thirteen). Against the Town of Windsor, plaintiffs have alleged violation of 42 U.S.C. § 1983 (Count Eighteen), negligence and carelessness (Count Nineteen), indemnification pursuant to Conn. Gen. Stat. § 7-465 (Count Twenty), and vicarious liability under Conn. Gen. Stat. § 52-557n (Count Twenty-One).

### I. Defendants Taylor and Pollick - § 1983 & State Constitutional Claims - Qualified Immunity

Plaintiffs claim that the defendants Taylor and Pollick violated their civil rights by attempting to execute an arrest warrant for Dennis Rowe at their home, located at 9 Craigs Road. They claim that their wrongful entry into their residence was done without a valid warrant, without probable cause, and without proper investigation. They also assert that defendants' unlawful entry and search of their home constituted an unlawful governmental intrusion of their clearly established rights under the Fourth and Fourteenth Amendments. Defendants assert that there is no genuine issue of material fact that their limited involvement in the execution of the arrest warrant did not violate plaintiffs' constitutional rights and, therefore, they are entitled to qualified immunity from suit. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001).

Government officials are subject to suit in their individual capacities for alleged violations of constitutional rights in the

6

course of their employment. However, qualified immunity shields them from liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, a government actor performing discretionary tasks is entitled to qualified immunity from suit if either (1) his actions did not violate clearly established law; or (2) it was objectively reasonable for him to believe that his actions did not violate such law. Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). The protection afforded by qualified immunity provides "an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Accordingly, the Supreme Court and Second Circuit have encouraged the use of summary judgment when qualified immunity is raised as a defense. See Hunter v. Bryant, 502 U.S. 224, 227-28 (1991); Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

It is undisputed that neither defendant Taylor nor Pollick was involved in the underlying investigation of suspect Rowe, or in applying for the arrest warrant, or in ascertaining the correct address for Rowe. The arrest warrant was a valid warrant issued the previous day, on October 19, 1999, by the Honorable Thomas P. Smith, U.S. Magistrate Judge. It is also undisputed that there were no facts known to either defendant that would have alerted him or her to the fact that Rowe no longer lived at

7

the Craigs Road address. They relied on the information provided by the other officers, which they had no reason to challenge. The first time either saw the warrant was only minutes before the attempted execution of the warrant. Absent knowledge of any facts or circumstances that would or should have reasonably alerted either officer to the fact that the suspect's address had changed, they had no duty to initiate their own investigation. See Baker v. McCollan, 443 U.S. 137, 143 (1979); Mann v. Township of Hamilton, No. 90-3377, 1991 WL 87586, at *2 (D.N.J. May 20, 1991).

In Hartsfield v. Lemacks, 50 F.3d 950, 956 (11th Cir. 1995), the Court held that, although a deputy sheriff who failed to make a reasonable effort to identify the proper residence to be searched was not entitled to qualified immunity on a civil rights claim, the officers who accompanied the deputy on the search were protected by qualified immunity because "nothing in the record indicate[d] that these officers acted unreasonably in following [the deputy's] lead, or that they knew or should have known that their conduct might result in a violation of the [plaintiff's] rights." Id. Here, the record is devoid of any evidence that would support the conclusion that either defendant acted unreasonably. They reasonably relied on the warrant, procured by the FBI, issued by a United States Magistrate Judge, and they were entitled to follow the lead of the federal agents in charge.

Although defendants did enter plaintiffs' home, armed with a

8

facially valid arrest warrant, nothing that they did while in the residence could be considered an unreasonable search. They did not open any doors or sealed containers or remove any property from the premises. Neither Officer Taylor nor Officer Pollick had any physical contact with any of the plaintiffs. An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives, or in which the officer reasonably believes him to live, when there is reason to believe that the suspect is present within the residence. Payton v. New York, 445 U.S. 573, 603 (1980); United States v. Terry, 702 F.2d 299, 319 (2d Cir.), cert. denied, 461 U.S. 931 (1983); United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir.), cert. denied, 516 U.S. 869 (1995); United States v. Stinson, 857 F. Supp. 1026, 1028 (D. Conn. 1994). The courts have recognized that once officers have a reason to believe that a suspect lives in a particular dwelling, they may reasonably infer that he will be home early in the morning. Terry, 702 F.2d at 319. In this case, the officers attempted to execute the arrest warrant around 6:00 a.m. Defendants could reasonably infer that Rowe should have been home at this hour.

"What a citizen is assured by the Fourth Amendment is not that no government search of his house will occur in the absence of a warrant . . . but that no such search will occur that is unreasonable." United States v. Lovelock, 170 F.3d 339, 343 (2d Cir.), cert. denied, 528 U.S. 853 (1999)(internal citations and

9

quotations omitted). The constitutional requirement is that an officer have a basis for a reasonable belief as to the operative facts, not that he is required to acquire all available information or that those facts exist. Id. at 344.

We find that there was no violation of any of the plaintiffs' Fourth Amendment rights with respect to any actions taken by either defendant. There being no violation of plaintiffs' constitutional rights, defendants Taylor and Pollick are entitled to qualified immunity from suit under § 1983 (Count One).

With respect to plaintiffs' unreasonable search and seizure claims brought under the Connecticut State Constitution, Art. I, §§ 7[3] and 9,[4] the Connecticut Supreme Court has recognized a Bivens-type cause of action for money damages in a case involving an unreasonable search and seizure and unlawful arrest. Binette v. Sabo, 244 Conn. 23, 49-50 (1998).

Although the Connecticut constitutional provisions involving

---

[3] Article I, § 7, of the Connecticut Constitution provides:

The people shall be secure in their persons, houses, paper and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

[4] Article I, § 9, of the Connecticut Constitution provides:

No person shall be arrested, detained or punished, except in cases clearly warranted by law.

10

unlawful searches and seizures have been interpreted to afford greater protections in certain areas than analogous federal constitutional provisions, see, e.g., State v. Leonard, 31 Conn. App. 178, cert. granted in part, 226 Conn. 912 (1993), appeal dismissed (1994), plaintiffs have cited no case in which the courts have recognized a violation of the State Constitution, Art. I, § 7 or § 9, under circumstances similar to those presented here. We have found no such authority. In Binette, the Connecticut Supreme Court looked to analogous federal law in determining whether there was a constitutional violation. 244 Conn. at 49-50. Accordingly, for the same reasons that we granted summary judgment in favor of defendants on plaintiffs' federal constitutional claims, we also grant summary judgment in favor of defendants on plaintiffs' claims under the Connecticut Constitution, Art. I, §§ 7 and 9 (Count Two).

## II. Defendants Police Chief Searles and the Town of Windsor - § 1983 - Monell Claims

Police Chief Searles was not personally involved in the investigation, obtaining the arrest warrant, or the attempted execution of the warrant at plaintiffs' residence. His only involvement was assigning two uniformed police officers from the town of Windsor, Taylor and Pollick, to assist FBI Task Force Team 10 in executing an arrest warrant in the Town of Windsor. He has been sued solely in his capacity as Chief of Police of the Town of Windsor for his alleged failure to promulgate and enforce

guidelines for the execution of arrest warrants, his alleged failure to properly train the police officers, his alleged failure to supervise, and his failure to take appropriate disciplinary action against the police officers for their allegedly negligent, willful, and intentional unlawful entry into plaintiffs' house and their unreasonable search while there. (Pls.' Compl. ¶¶ 99, 105, 108.) Likewise, plaintiffs' claims against the Town of Windsor are based on these same alleged deficiencies. (Pls.' Compl. ¶¶ 115, 119, 127, 132.)

Plaintiffs, relying on Monell v. Department of Social Services of New York, 436 U.S. 658 (1978), have asserted that the Town of Windsor and Police Chief Searles are liable under 42 U.S.C. § 1983. They argue that the Town's and Police Chief's failure to properly train and supervise its police officers, to promulgate appropriate guidelines, and to take disciplinary action against the officers constitutes "deliberate indifference" to the rights of plaintiffs.[5] Because we have found that neither Officer Pollick or Taylor violated the constitutional rights of any of the plaintiffs, plaintiffs can have no claim against the Town or its Police Chief under Monell for failure to train, supervise, establish proper guidelines, or to discipline. As the

---

[5] Plaintiffs have attached to their response two newspaper articles concerning a different incident in which the Windsor Police Department was involved in a raid on the wrong apartment. To the extent that plaintiffs are offering these to show the truth of the matters asserted therein, they are excluded under Rule 801(c), FRE, as hearsay.

12

Supreme Court held in <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1985), "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have <u>authorized</u> the use of constitutionally excessive force is quite beside the point." (Original emphasis). "[N]either <u>Monell</u> . . . nor any other [Supreme Court] case[] authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." <u>Id.</u>

Accordingly, summary judgment is granted in favor of defendants Searles and the Town of Windsor on plaintiffs' § 1983 claims (Counts Eleven and Eighteen).[6]

### III. State Common-Law Negligence Claims

Plaintiffs have also asserted common-law tort claims for negligent assault, negligent infliction of emotional distress, and negligence against defendants Pollick and Taylor (Counts Four, Five, and Seven), as well as claims for negligence against Chief Searles (Count Twelve) and the Town of Windsor (Count Nineteen). These claims are barred by the doctrine of governmental immunity.

It is well-settled that a municipality cannot be sued

---

[6] Similarly, plaintiffs claims against Officers Pollick and Taylor in the official capacities must also fail, since these claims are considered claims against the municipality itself. <u>Brandon v. Holt</u>, 469 U.S. 464, 472 (1985).

13

directly for common-law negligence. <u>Williams v. City of New Haven</u>, 243 Conn. 763, 766-67 (1988). Likewise, plaintiffs' claims against the Police Chief and the individual officers in their official capacities must fail since any claim against them in their official capacities is tantamount to a claim against the Town itself.

With respect to plaintiffs' claims against the individual defendants in their individual capacities, municipal employees are immune from liability for the performance of governmental acts, as distinguished from ministerial acts. All actions of the defendants that are challenged in this case were governmental acts, <u>see</u> <u>Gordon v. Bridgeport Housing Authority</u>, 208 Conn. 161, 167-68 (1988), and, therefore, defendants Searles, Taylor, and Pollick are entitled to governmental immunity as to those acts. The operation of a police department has been held to be a government function, <u>id.</u>, as has the execution of arrest warrants. See <u>Pagan v. Anderson</u>, No. 388804, 1991 WL 169530, at *2 (Conn. Super. Ct. Aug. 22, 1991).

An exception to the rule that a public officer is immune from civil liability for discretionary acts is when it would be apparent to the officer that a failure to act would likely subject an identifiable person to imminent harm. See <u>Evon v. Andrews</u>, 211 Conn. 501 (1989). Here, however, there is no evidence that the actions or inactions of these officers were likely to subject plaintiffs to imminent harm. We find that the

14

"identifiable-imminent harm" exception to the general rule of governmental immunity does not apply here. Therefore, we grant defendants' motion for summary judgment as to plaintiffs' negligence claims (Counts Four, Five, Seven, Twelve, and Nineteen).

## IV. Town of Windsor - Indemnication

Additionally, plaintiffs have sought indemnification from the Town of Windsor, pursuant to Conn. Gen. Stat. § 7-465.[7] The statute indemnifies municipal employees who, acting in the scope of their employment, become obligated to pay damages for injury to person or property. Any municipal liability which may attach under this statute is predicated on a prior finding of individual negligence on the part of the employee and the municipality's relationship with that employee. Wu v. Town of Fairfield, 204 Conn. 435, 438 (1987). The only employees of the Town of Windsor that have been named by plaintiffs are Officers Taylor and

---

[7] Section 7-465 provides in relevant part:

(a) Any town, city or borough, . . . shall pay on behalf of any employee of such municipality, . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . .

15

Pollick and Chief Searles. "A plaintiff bringing suit under General Statutes § 7-465 first must allege in a separate count and prove the employee's duty to the individual injured and the breach thereof. Only then may the plaintiff go on to allege and prove the town's liability by indemnification." Sestito v. City of Groton, 178 Conn. 520, 527 (1979). "This is a personal liability requirement that calls for an inquiry independent of the statute itself, an inquiry into the factual matter of individual negligence." Id. at 528. There has been no showing of negligence on the part of any employees of the Town of Windsor that was a proximate cause of any of the plaintiffs' injuries. Absent this necessary predicate, plaintiffs' claim against the Town under § 7-465 (Count Twenty) must fail.

### V. Liability Under § 52-557n

Plaintiffs have also asserted a claim against the Town pursuant to Conn. Gen. Stat. § 52-557n.[8] Again, any liability

---

[8] Section 52-557n provides in relevant part:

(a)(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; . . .

(2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for

16

under this section in predicated on a prior finding of negligence by Officer Taylor, Officer Pollick, or Chief Searles. Furthermore, even if there were such a finding, this section expressly exempts a political subdivision of the State from any liability for damages to a person caused by "negligent acts or omissions that require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-557n(a)(2)(B). Any claim against Chief Searles or Officer Taylor or Pollick is based upon their performance of discretionary, as opposed to ministerial, acts, which are part of the official functions of the authority granted to them as police officers. The exception set forth in § 52-577n(a)(2)(B) would apply to those acts. Therefore, the Town is entitled to summary judgment on Count Twenty-one of plaintiffs' complaint.

## VI. Intentional Tort Claims

Finally, plaintiffs have asserted a number of intentional state-law tort claims against defendants Pollick and Taylor: willful assault (Count Three), intentional infliction of emotional distress (Count Six), invasion of privacy (Count

---

damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

17

Eight), and trespass (Count Nine). Having dismissed all of plaintiffs' federal claims, we also dismiss their pendent state-law claims. 28 U.S.C. § 1367(c); see United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). We therefore do not reach the merits of defendants' motion for summary judgment on Counts Three, Six, Eight, and Nine.

### Conclusion

Accordingly, the Motion for Summary Judgment [Doc. # 79] of Defendants Dwayne Taylor, Shannon Pollick-Haynes, Kevin Searles, and the Town of Windsor is GRANTED in all respects. This ruling disposes of all claims against all of the remaining defendants in this case. Therefore, the Clerk is directed to close this file.

SO ORDERED.

Date: November 4, 2003.
Waterbury, Connecticut.

GERARD L. GOETTEL,
United States District Judge

18